## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**DON THOMAS MERCELEANY**                                **PLAINTIFF**
**MAXWELL/G-DOFFEE**
**ADC #108778**

**V.**                              **NO. 4:22-cv-00482-JM-ERE**

**ALICIA SIMMONS,** *et al.*                              **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.    Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Moody may adopt this Recommendation without independently reviewing all the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**II.    Background:**

*Pro se* plaintiff Don Thomas Merceleany Maxwell/G-Doffee ("Mr. G-Doffee"), an Arkansas Division of Correction ("ADC") inmate, filed this civil rights lawsuit under 42 U.S.C. § 1983. *Doc. 2*. Mr. G-Doffee currently proceeds on the following claims: (1) Corporal Wayne Price, Sergeant Alicia Simmons, Corporal

Donavan Hill, Sergeant Oliver Steverson, and Warden Gary Musselwhite (collectively, "ADC Defendants") failed to protect him from an inmate attack that occurred on July 23, 2021; (2) Sergeant Simmons failed to protect him from the July 23 inmate attack in retaliation for his use of the ADC inmate grievance procedure; (3) Sergeant Steverson used excessive force against him by spraying him with a chemical agent; (4) Advanced Practice Nurse ("APN") Rose Newby failed to provide him adequate medical treatment during his clinical encounter with her on August 11, 2021; (5) APN Lerizza Nunag failed to provide him adequate medical treatment when she failed to renew his nortriptyline prescription after July 23, 2021; and (6) APN Nunag failed to renew his prescriptions in retaliation for his for his use of the grievance process.[1] *Doc. 119*.

Defendants Newby and Nunag (collectively, "Medical Defendants") and the ADC Defendants have filed motions for summary judgment, briefs in support, and statements of fact arguing that they are entitled to judgment as a matter of law on Mr. G-Doffee's claims against them. *Docs. 152, 153, 154, 157, 158, 160, 186, 187, 188, 200*. Mr. G-Doffee has responded to Defendants' motions, ADC Defendants

---

[1] The Court previously dismissed Mr. G-Doffee's claims against Defendant Jones and the unidentified Doe Defendant based on his failure to timely serve those Defendants. *Doc. 84*. In addition, the Court previously dismissed Mr. G-Doffee's medical deliberate indifference claims against Defendants Kemper, Chisom, Mosby, and Gardner, as well as any additional claims against Defendants Newby and Nunag, based on his failure to exhaust his administrative remedies. *Doc. 119*.

have replied to Mr. G-Doffee's response, and Mr. G-Doffee has filed a sur-reply. *Docs. 166, 167, 168, 169, 173, 175, 176, 177, 179, 192, 193, 194, 198, 199, 203, 206, 213*. The motions are now ripe for review.

## III.   <u>Discussion</u>:

### A.   **Summary Judgment Standard**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

**B.**  **ADC Defendants' Motions for Summary Judgment**

**1.**  **Facts Related to the ADC Defendants[2]**

The following events are documented on ADC video footage. *Docs. 157-21, 157-22*. On July 23, 2021, at approximately 7:56 p.m., Mr. G-Doffee and other Cummins Unit inmates were watching television in the 11 barracks dayroom, when Mr. G-Doffee rose from his back-row seat and began walking out of the room. *Doc. 157-21 at 1; Doc. 157-22*. While leaving, Mr. G-Doffee said something to inmate Frederick Mason, seated on the end of the front row. *Id*. After Mr. G-Doffee left the dayroom, he immediately returned and appeared to have words with inmate Mason.[3] *Id*. Mr. G-Doffee then walked to the television and struck it, causing the screen to crack and go black. *Id*.; *Doc. 157-15 at 2*. Before leaving the room a second time, Mr. G-Doffee approached inmate Mason in an aggressive stance. *Doc. 157-21 at 1; Doc. 157-22*.[4]

---

[2] Unless otherwise specified, these facts are taken from: (1) a video recording of the incident, including the video outline of the incident (*Doc. 157-21, Doc. 157-22*); (2) investigative documents regarding the incident (*Doc. 157-16, Doc. 157-17, Doc. 157-19, Doc. 157-20*); and (3) Defendant Steverson's amended declaration (*Doc. 199-1*).

[3] According to inmate Mason, on July 23, 2021, Mr. G-Doffee "threaten[ed] [his] life with a homemade knife before going to pill call." *Doc. 157-20 at 2*.

[4] In his declaration and statement of disputed facts in opposition to the ADC Defendants' motion for summary judgment, Mr. G-Doffee disputes whether: (1) he was the inmate in the video recording presented by the ADC Defendants; and (2) that the video depicts destruction of the dayroom television. *Doc. 168 at 2; Doc. 169 at 9*.

Several minutes later, at 8:05 p.m., Mr. G-Doffee returned to 11 barracks, where inmate Mason was sitting on Mr. G-Doffee's bed. *Id*. Inmate Mason then struck Mr. G-Doffee with a white object resembling a pillowcase. *Id*. For the next twenty seconds, inmate Mason continued to strike Mr. G-Doffee and then placed Mr. G-Doffee in a bear hug. *Id*.

At 8:07:58 p.m., Defendant Simmons arrived inside the barracks and attempted to speak with Mr. G-Doffee and inmate Mason. *Id*. At 8:08:13, Defendant Hill began to walk toward Defendant Simmons. *Id*. At 8:08:38, Defendant Simmons called a Code 2 (assault with a weapon) and Defendant Hill left the barracks. *Id*. At 8:09:29, Defendant Simmons attempted to have other inmates in the immediate area step back, then he left the area where Mr. G-Doffee and inmate Mason were located. During this time, Mr. G-Doffee and inmate Mason continued to struggle.

At 8:09:38, Defendant Steverson entered the barracks and walked directly toward Mr. G-Doffee and inmate Mason, and Defendants Simmons and Price returned to the barracks. *Doc. 157-21 at 2; Doc. 157-22*. At this time, inmate Mason held Mr. G-Doffee in a bear hug, and Defendant Steverson observed a "shank" in Mr. G-Doffee's hand. *Doc. 199-1 at 1*. Unidentified ADC officers then instructed Mr. G-Doffee to let go of the weapon, threatening that a chemical agent would be used if he disobeyed the order. *Id*. At 8:11:31, Mr. G-Doffee released the weapon, and inmate Mason released Mr. G-Doffee. *Doc. 157-21 at 2; 157-22*. Both inmate

Mason and Mr. G-Doffee then exit the barracks with blood on their clothing. *Doc. 157-22.*

Immediately following the incident, ADC officers confiscated both a padlock and a homemade shank. *Doc. 157-16; Doc. 157-20 at 1; Doc. 157-20 at 4, 7.*

At no time did any ADC staff member deploy a chemical agent. *Doc. 199-1 at 2.* The entire incident lasted less than eight minutes. *Doc. 157-21 at 1-2; Doc. 157-22.*

Upon arrival at the Cummins infirmary, medical staff placed Steri Strips on Mr. G-Doffee's head and photographed his injuries. *Doc. 157-19.* Defendant Simmons then prepared a "gate pass" for Mr. G-Doffee, allowing his transport to an outside medical facility. *Doc. 157-17 at1.*

ADC officers transported Mr. G-Doffee to Jefferson Regional Medical Center for medical treatment and then returned him to the Cummins Unit, where medical staff noted he had sustained puncture wounds, a head laceration, and face abrasions. *Doc. 154-1 at 1.*

## 2.      Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Mr. G-Doffee's official-capacity claims against Defendants seeking money damages are barred by sovereign immunity.

### 3.   Qualified Immunity

As to individual-capacity claims, the ADC Defendants assert qualified immunity, which protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).

In deciding the question of qualified immunity, the Court cannot treat Defendants as "one unified group," but must consider each Defendant's conduct to determine whether evidence against that "individual officer [is] sufficient to overcome qualified immunity." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)).

### a.   Failure to Protect

"A prison official may be liable for failure to protect an inmate from a use of excessive force if he is deliberately indifferent to a substantial risk of serious harm to an inmate." *Est. of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1395 (8th Cir.

1997) (citing *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994); *Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993)). Under the deliberate indifference standard, prison officials do not commit a constitutional violation every time one prisoner attacks another. *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018); *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007); *Blades v. Schuetzle*, 302 F.3d 801, 803-04 (8th Cir. 2002). Instead, prison officials must "take reasonable measures to abate substantial risks of serious harm, of which the officials are aware." *Blades*, 302 F.3d at 803 (quoting *Reece v. Groose,* 60 F.3d 487, 491 (8th Cir. 1995)).

Therefore, to proceed to trial on a claim that any specific Defendant failed to protect him, Mr. G-Doffee must come forward with evidence that would permit a reasonable jury to find that: (1) he was incarcerated under conditions that, objectively, posed a substantial risk of serious harm; (2) the Defendant was subjectively aware that Mr. G-Doffee faced a serious risk of harm; and (3) the Defendant disregarded that risk by failing to take reasonable measures to abate the risk. *Patterson*, 902 F.3d at 851 (citations omitted). "The second requirement is a subjective test; the defendant must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (quoting *Farmer*, 511 U.S. at 837).

Mr. G-Doffee "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). Deliberate indifference describes a state of mind "akin to criminal recklessness." *Shipp v. Murphy*, 9 F.4th 64, 703 (8th Cir. 2021) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate[.]" *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (cleaned up).

Finally, an inmate's general fear for his safety is insufficient to establish that a defendant acted with deliberate indifference to substantial risk of serious harm. See e.g., *Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994) (an inmate's complaints regarding a "general fear for his safety" do not establish that a defendant "acted with deliberate indifference by not placing him in protective custody"); *Jones v. Wallace*, 641 Fed. Appx. 665 (8th Cir. 2016) (unpublished) (a general fear of another inmate is not sufficient to put guards on notice of a specific threat or danger).

### i.     Defendant Price

In his complaint and responses in opposition to ADC Defendants' motions for summary judgment, Mr. G-Doffee alleges that: (1) other inmates "put [Defendant Price] on notice" about the initial disagreement between Mr. G-Doffee and inmate Mason that occurred in the dayroom (*Doc. 2 at 6*); (2) he heard Defendant Price tell

inmate Mason "gone [sic] ahead & beat that a** then" after Mr. G-Doffee entered 11 barracks (*Id. at 7*); (3) once the attack began, Defendant Price "stood idly" outside of the barracks (*Id. at 8-9; Doc. 167 at 25, 28*); and (4) Defendant Price failed to give inmate Mason a direct order to stop the attack or use a chemical weapon against inmate Mason. *Doc. 2 at 9*. Mr. G-Doffee alleges that after inmate Mason began assaulting him, he saw Defendant Price leave 11 barracks, locking him in, and the attack continued for approximately sixteen more minutes. *Id. at 8, 12.*

Mr. G-Doffee fails to present any evidence to support his allegations regarding Defendant Price's alleged knowledge of any specific threat inmate Mason posed to Mr. G-Doffee's safety on the date in question. First, Mr. G-Doffee fails to identify which inmates notified Defendant Price about the initial disagreement between Mr. G-Doffee and inmate Mason or what exactly the unidentified inmates told Defendant Price. Furthermore, the video of the incident reveals that inmate Mason sat on Mr. G-Doffee's bed toward the back of the barracks when Mr. G-Doffee entered, not by the door where he could have possibly communicated with Defendant Price. *Doc 157-21 at 1; Doc. 157-22*. In addition, although Mr. G-Doffee states that Defendant Price stood "idly by" as the assault occurred, he fails to present any evidence regarding Defendant Price's location during the incident or whether he could possibly see the altercation from his vantage point. Moreover, Mr. G-Doffee's

assertion that the altercation lasted sixteen minutes is refuted by the video evidence showing that that it continued no longer than eight minutes.

According to the video footage, at 8:09:40, Defendant Price entered the barracks. *Doc. 157-21 at 2; Doc. 157-22.* At 8:11:31, within two minutes, inmate Mason released Mr. G-Doffee. It is well established that "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995). Here, ADC officials confiscated two weapons following the altercation between Mr. G-Doffee and inmate Mason, and Defendant Steverson testified that Mr. G-Doffee was holding a shank during the incident. Defendant Price was not constitutionally required to risk his own safety to intervene in an altercation between two inmates armed with weapons.

Because the video lacks sound, it is unclear what Defendant Price said during the incident or whether he ordered inmate Mason to stop. However, the video shows that within a minute after Defendant Price entered the barracks, other ADC officers arrived carrying a chemical agent. *Doc. 157-21 at 2; Doc. 157-22.* Finally, there is no evidence that inmate Mason would have obeyed a direct order to release Mr. G-Doffee.

Mr. G-Doffee fails to present any evidence to create any genuine issue of material fact regarding whether Defendant Price was deliberately indifferent to his

safety during the underlying incident. Defendant Price is entitled to qualified immunity on Mr. G-Doffee's failure to protect claim against him.

### ii.     Defendants Simmons and Hill

Mr. G-Doffee alleges that once the attack began, Defendants Simmons and Hill (1) stood idly outside the barracks (*Id. at 8-9; Doc. 167 at 25, 28*); and (2) failed to give inmate Mason a direct order to stop the attack or use a chemical agent against inmate Mason (*Doc. 2 at 9*).

To the contrary, the video of the alleged incident shows: (1) at 8:07:58, Defendant Simmons arrived inside the barracks and attempted to speak with Mr. G-Doffee and inmate Mason (*Doc. 157-21 at 2; Doc. 157-22*); (2) at 8:08:13, Defendant Hill began to walk toward Defendant Simmons; (3) at 8:08:38, Defendant Simmons called a Code 2 (assault with a weapon) (*Id.*); and (4) at 8:09:29, Defendant Simmons attempted to get other inmates in the immediate area to step back (*Id.*). Furthermore, while Defendants Simmons and Hill left the barracks at different times during the incident, as discussed above, they were not required, under clearly established law, to put themselves in harm's way to stop an inmate attack. Based on the evidence presented, Defendants Simmons and Hill did not stand "idly" by as the attack continued but instead acted reasonably by attempting to intervene and calling for assistance. Mr. G-Doffee's self-serving, unsubstantiated allegations are insufficient to defeat a motion for summary judgment. *Conolly v. Clark*, 457 F.3d

872, 876 (8th Cir. 2006); *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor").

Mr. G-Doffee has failed to create a material dispute of fact regarding the conduct of Defendants Simmons and Hill and these Defendants also are entitled to qualified immunity on Mr. G-Doffee's failure to protect claims against them.

### iii.    Defendant Steverson

Mr. G-Doffee alleges that Defendant Steverson came into the barracks "taking inmate [] Mason's word" and violated his "right to be protected from an inmate attacker (known substantial risk of serious harm and danger)." *Doc. 2 at 10-11*. Mr. G-Doffee provides no facts plausibly supporting that Defendant Steverson either knew that he faced a risk of attack on the date in question or demonstrated deliberate indifference to any such risk. Because Mr. G-Doffee has failed to state a failure to protect claim against Defendant Steverson, he is entitled to qualified immunity on this claim.

### iv.    Defendant Musselwhite

To show that ADC Defendants had prior knowledge that he faced a risk of attack, Mr. G-Doffee states that he filed inmate grievance CU-21-00834 and an inmate request and "verbally informed defendant G. Musselwhite of these specific threats of harm after identifying inmate F. Mason to staff." *Doc. 167 at 3, 17.*

However, in grievance CU-21-00834, Mr. G-Doffee requested that inmate Michelle Smith be placed on his enemy alert list, and he did not mention inmate Mason. *Doc. 157-3 at 2*.

Furthermore, in his own declaration, Mr. G-Doffee acknowledges that on approximately June 15, 2021, he sent a request for an interview to Defendant Musselwhite, asking to be classified to another barracks. *Doc. 168 at 2*.[5] Notably, Mr. G-Doffee does not state that he notified Defendant Musselwhite of any specific threat posed by inmate Mason at any time or on the date in question; nor does he say whether Defendant Musselwhite received or responded to his request for an interview.

---

[5] In his Complaint, Mr. G-Doffee alleges that Defendant Musselwhite was deliberately indifferent to his safety via inadequate staffing and security. *Doc. 2 at 14*. However, in deciding the ADC Defendants' motion for summary judgment on exhaustion, the Court permitted Mr. G-Doffee to proceed with specified claims, none of which include the general claim that Defendant Musselwhite failed to provide adequate staff or security. *Doc. 119 at 1*; *Doc. 111 at 7* (describing claims against ADC that would proceed). Thus, no such claim is before the Court.

Even if the Court were to consider this claim, it fails as a matter of law. Mr. G-Doffee generally claims that the Cummins Unit was understaffed and "has a long duration of these type of cruel prison conditions." *Doc. 167 at 3*. However, he presents no evidence, other than his own conclusory testimony, that he was incarcerated under conditions that posed a substantial risk of serious harm to inmates based on inadequate staffing. If a plaintiff "presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer*, 511 U.S. at 842. Mr. G-Doffee fails to present any such evidence.

Because Mr. G-Doffee has failed to present any evidence to support his self-serving allegation that he notified Defendant Musselwhite that inmate Mason posed a threat to his safety, Defendant Musselwhite also is entitled to qualified immunity on Mr. G-Doffee's failure to protect claim.

### b.    Retaliation – Defendant Simmons

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (cleaned up). To succeed with his retaliation claim, Mr. G-Doffee must prove that: (1) he engaged in constitutionally protected activity; (2) Defendant Simmons took adverse action against him that would chill a person of ordinary firmness from continuing in that activity; and (3) the adverse action was motivated by the exercise of the protected activity. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). The Eighth Circuit has explained:

> To survive summary judgment, a plaintiff must show that a reasonable jury could find that a retaliatory motive of the government official was a "but-for cause" of the adverse action, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Graham v. Barnette*, 5 F.4th 872, 889 (8th Cir. 2021) (cleaned up). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was

injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

"And, of course, [Mr. G-Doffee's] final hurdle is overcoming qualified immunity: establishing that it would have been sufficiently clear to every reasonable official that [Defendant Simmons' response to the June 23 incident] violated the First Amendment." *Beard v. Falkenrath*, 97 F.4th 1109, 1119 (8th Cir. 2024) (cleaned up).

Mr. G-Doffee alleges that Defendant Simmons failed to protect him from inmate Mason on June 23, 2021 in retaliation for grievances he filed against her on May 11 and May 15, 2021. *Doc. 2 at 17, 18, 44, 46.* Mr. G-Doffee successfully establishes the first element of his claim because it is undisputed that he filed the grievances, and clearly established law holds that using a prison grievance process is protected First Amendment activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) ("The right to be free from retaliation for availing one's self of the prison grievance process has been clearly established in this circuit for more than twenty years.").

However, Mr. G-Doffee's claim fails under the second and third elements, which together require proof of "an adverse action that would chill a person of ordinary firmness from continuing in the activity, which itself must be a 'but-for' cause' of the injury suffered." *Beard*, 97 F.4th at 1119 (cleaned up).

Summary judgment is appropriate if there is insufficient evidence that the alleged adverse action would deter a person of ordinary firmness from continuing to engage in First Amendment protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020). While this test is objective, Mr. G-Doffee's actions following Defendant Simmons' alleged retaliation is evidence of what a person of ordinary firmness would have done. *Id*. The ADC Defendants provide Mr. G-Doffee's grievance history beginning after the July 23, 2021 incident. *Doc. 173-3*. Those records show that Mr. Doffee submitted 14 grievances between July 23, 2021 and December 31, 2021, 38 grievances in 2022; and at least 35 grievances in 2023. *Id*. The volume of Mr. G-Doffee's grievance submissions indicate that he was undeterred from his continued and frequent use of the prison grievance process by Defendant Simmons' alleged retaliatory conduct. Mr. G-Doffee presents no contrary evidence suggesting that a person of ordinary firmness would have hesitant to use the prison grievance process as a result of Defendant Simmons' conduct during the inmate altercation involving Mr. G-Doffee.

Finally, beyond the temporal proximity between his May 2021 grievances and Defendant Simmons' alleged retaliatory conduct on June 23, 2021,[6] Mr. G-Doffee offers no facts plausibly linking his protected activity to the alleged retaliation. He

---

[6] Temporal proximity between protected activity and alleged retaliation is relevant but generally insufficient to provide a basis for inferring retaliatory intent. *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006)

alleges when he returned from the emergency room on June 23, 2021, Defendant Simmons commented, "[T]hat Maxwell got what he needed, he got that a** beat." *Id. at 20*. This alleged comment does not reference Mr. G-Doffee's grievances and provides no evidence of a retaliatory motive. In addition, the evidence that Defendant Simmons took reasonable action during the altercation between Mr. G-Doffee and inmate Mason would prevent any reasonable fact finder from concluding that retaliatory animus was the but-for cause of Defendant Simmons' response at the scene.

For the reasons stated, Mr. G-Doffee cannot prove: (1) a causal connection between any grievance he filed and Defendant Simmons' actions; (2) a retaliatory motive on Defendant Simmons' part; or (3) that her actions would chill a person of ordinary firmness from exercising his or her First Amendment rights. Accordingly, Defendant Simmons is entitled to qualified immunity on Mr. G-Doffee's retaliation claim against her.

### c.    Excessive Force – Defendant Steverson

To prevail on his Eighth Amendment excessive-force claim, Mr. G-Doffee must demonstrate that Defendant Steverson used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). To act "maliciously" means "taking a course of action, without just

cause or reason, that was intended to injure the inmate." *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted). An officer who acts "sadistically" engages in "extreme or excessive cruelty" or "delight[s] in cruelty." *Id*. "The word 'sadistically' is not surplusage; 'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (citation omitted).

In evaluating whether the force employed by Defendant Steverson was a good-faith effort to restore order, factors to consider include: (1) the objective need for the force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by Defendant Steverson; (4) any efforts made by Defendant Steverson to temper the severity of his response; and (5) the extent of Mr. G-Doffee's injuries. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

In his complaint, Mr. G-Doffee alleges that, immediately following the altercation with inmate Mason, Defendant Stevenson sprayed a chemical agent at him "at point blank range." *Doc. 2 at 11*. Contrary to Mr. G-Doffee's allegations, video footage of the incident does not show Defendant Steverson using any chemical on Mr. G-Doffee. *Doc. 154-20, Doc. 154-21*. In addition, according to Defendant

Steverson's declaration, no ADC officer deployed any chemical agent during the July 23, 2021 incident. *Doc. 199-1 at 2*.

Based on the undisputed evidence before the Court, Mr. G-Doffee has failed to create any genuine issue of material fact regarding Defendant Steverson's alleged use of force. As a result, Defendant Steverson is entitled to qualified immunity on Mr. G-Doffee's excessive force claim. See *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

### C.   Medical Defendants' Motion for Summary Judgment

#### 1.   Facts Related to the Medical Defendants[7]

On July 28, Defendant Newby conducted a follow-up examination of Mr. G-Doffee's scalp laceration. *Doc. 154-3 at 1*. She noted swelling on Mr. G-Doffee's face and continued his prescriptions for amoxicillin, ibuprofen, and nortriptyline. *Id*.

On August 11, Defendant Newby again examined Mr. G-Doffee. *Docs. 154-3, 154-4*. At that time, he complained of right jaw pain, reporting level five pain on

---

[7] Unless otherwise indicated, these facts are taken from excerpts of Mr. G-Doffee's medical records. *Doc. 154-3, Doc. 154-5, Doc. 154-6, Doc. 154-7, Doc. 154-8, Doc. 154-9, Doc. 154-10, Doc. 154-11, Doc.154-12*.

a ten-point pain scale and that the pain was worse when he ate. *Doc. 154-4 at 1*. Defendant Newby again noted swelling and continued Mr. G-Doffee's prescriptions. *Id*. She also ordered an x-ray of Mr. G-Doffee's facial bones. *Id*.

On September 9, Defendant Nunag examined Mr. G-Doffee. *Doc. 154-5 at 1*. She noted that Mr. G-Doffee could open and close his jaw without popping or difficulty and had no edema. *Id*. She prescribed naproxen as needed. *Id*.

On September 20, Defendant Nunag examined Mr. G-Doffee and reviewed his July 23 CT scan. *Doc. 154-4 at 1*. The scan revealed degenerative joint disease of the cervical spine. *Id*. She ordered prednisone for Mr. G-Doffee and advised him to continue with range of motion and memory exercises. *Id*.

On October 20, Mr. G-Doffee returned to Health Services requesting that medical staff renew his prescriptions for naproxen and nortriptyline. *Id*. He complained of headaches and back pain. *Id*. Defendant Newby renewed Mr. G-Doffee's prescriptions for naproxen and nortriptyline. *Doc. 154-5 at 1*.

On January 27, 2022, Defendant Newby examined Mr. G-Doffee based on his complaints of jaw pain. *Docs. 154-8*. She noted that he was able to open and close his jaw without difficulty and noted no popping or edema. *Id*. Defendant Newby ordered naproxen and nortriptyline for Mr. G-Doffee. *Id*.

On March 31, Mr. G-Doffee returned to Health Services for complaints of sinus problems and back pain. *Doc. 154-8*. Defendant Newby ordered a continuation of Mr. G-Doffee's medications. *Id*.

On April 25, although medical staff were not able to evaluate Mr. G-Doffee due to security concerns, Defendant Nunag ordered naproxen for Mr. G-Doffee until he could be seen by medical staff. *Id*.

On April 27, Mr. G-Doffee again returned to Health Services complaining of headaches and back pain. *Doc. 154-11 at 1*. He requested that medical staff renew his medications. *Id*. Defendant Newby ordered naproxen for Mr. G-Doffee. *Id*. She found no "clinical indication" for nortriptyline. *Id*.

On May 4, Mr. G-Doffee returned to Health Services again complaining of headaches and back pain. *Id*. Defendant Newby again ordered Mr. G-Doffee naproxen and found no "clinical indication" for nortriptyline. *Id*.

## 2. Medical Deliberate Indifference

Mr. G-Doffee claims that the Medical Defendants demonstrated deliberate indifference to his serious medical needs.  His remaining claims arise from: (1) his clinical encounter with Defendant Newby on August 11, 2021; (2) his clinical encounter with Defendant Nunag on September 20, 2021; and (3) Defendant Nunag's failure to renew his nortriptyline prescription. *Doc. 119 1 at 2*.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). At the summary judgment stage, Mr. G-Doffee "must clear a substantial evidentiary threshold" to show that a Medical Defendant acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference.[8] *Id. at 575*. Instead, deliberate indifference requires culpability akin to criminal recklessness, which is more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

In addition, disagreement with treatment decisions alone cannot support a deliberate indifference claim. *Barr v. Pearson*, 909 F.3d 919, 921-22 (8th Cir. 2018). An inmate has no right to a particular or requested course of treatment, and a mere difference of opinion over matters of expert medical judgment or the course of treatment does not amount to a constitutional violation. *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (where medical records show that treatment was

---

[8] Mr. G-Doffee's pleadings assert only federal constitutional claims, the only claims addressed in this Recommendation. Accordingly, it is unnecessary to assess whether either Medical Defendant acted negligently in violation of state law. See also 28 U.S.C. § 1367(c)(3) (district court may, once it has dismissed federal claims on which its original jurisdiction is based, decline to exercise jurisdiction over supplemental state law claims).

provided; and physician affidavits state that the care was adequate, an inmate's belief that she did not receive adequate care is insufficient to create disputed material fact).

Stated another way, the Medical Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (internal citation omitted).

The Medical Defendants submit the affidavit of Nicholas Gowen, M.D., FACP. *Doc. 154-2*. Dr. Gowen testifies that: (1) "Nortriptyline is a tricyclic antidepressant FDA approved to treat depression"; (2) "there was no clinical indication for Mr. []G-Doffee to be treated with nortriptyline, and nortriptyline can have significant adverse effects"; (3) "it is a good and appropriate medical practice to periodically re-evaluate the use of nortriptyline and consider discontinuing it"; and (4) "Naproxen is an appropriate, first-line, medication for pain relief . . . that was a reasonable choice here." *Id. at 2-3*.

Based on the undisputed evidence before the Court, no reasonable juror could conclude that the Medical Defendants were deliberately indifferent to Mr. G-Doffee's medical needs. To the contrary, on the dates in question, the Medical

Defendants: (1) promptly responded to Mr. G-Doffee's medical requests; and (2) addressed his complaints by providing a variety of medications. Such conduct can hardly be described as criminally reckless.

In addition, Mr. G-Doffee offers no evidence contradicting Dr. Gowen's testimony that the Medical Defendants made reasonable decisions regarding his medical care.[9]

On this record, there is no genuine issue of material fact on medical deliberate indifference claims, and the Medical Defendants are entitled to judgment as a matter of law.

### 3.    Retaliation – Defendant Nunag

As explained above, to succeed on a retaliation claim, Mr. G-Doffee must prove that: (1) he engaged in constitutionally protected activity; (2) Defendant Nanag took adverse action against him that would chill a person of ordinary firmness from continuing in that activity; and (3) the adverse action was motivated by the exercise of the protected activity. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Moreover, allegations of retaliation must be more than speculative and conclusory. *Antonelli v. Tipton*, 356 Fed. Appx. 903, 904 (8th Cir. 2009) (per

---

[9] In his brief in support of his response to the Medical Defendants' motion for summary judgment, Mr. G-Doffee alleges that the Medical Defendants failed to provide him triple antibiotic ointment to prevent scarring, a back brace, extra pillows or padding, or a soft food diet. *Doc. 176 at 12, 15-16*. Any such claims were not raised in Mr. G-Doffee's fully exhausted medical grievances and, therefore, the Court previously dismissed those claims from this lawsuit, without prejudice. *Docs. 111, 119*.

curiam) (plaintiff "failed to state a retaliation claim because he . . . failed to allege which defendants were involved in or affected by his grievances.").

Here, Mr. G-Doffee provides no evidence that Defendant Nunag refused to renew his nortriptyline prescriptions in retaliation for his use of the grievance procedure. Furthermore, it is undisputed that Mr. G-Doffee continued to file grievances after July 23, 2021. See *Doc. 173-3*.

As a result, Mr. G-Doffee cannot prove: (1) a causal connection between any grievance he filed and Defendant Nunag's actions; (2) a retaliatory motive on Defendant Nunag's part; or (3) that her actions would chill a person of ordinary firmness from exercising his or her First Amendment rights. Accordingly, Mr. Defendant Nunag is entitled to judgment as a matter of law on Mr. G-Doffee's retaliation claim against her.

## IV.   <u>Conclusion:</u>

IT IS THEREFORE RECOMMENDED THAT:

1.     Medical Defendants' motion for summary judgment (*Doc. 152*) be GRANTED.

2.     ADC Defendants' motions for summary judgment (*Doc. 157, 186*) be GRANTED.

3.     Mr. G-Doffee's motion for order (*Doc. 166*) be DENIED.

4.      Mr. G-Doffee's remaining claims against all Defendants be DISMISSED, with prejudice.

5.      The Clerk be instructed to close this case.

Dated 22 May 2024.


_____
UNITED STATES MAGISTRATE JUDGE